STEVEN G. KALAR
Federal Public Defender
JODI LINKER
Assistant Federal Public Defender
450 Golden Gate Avenue
San Francisco, CA 94102
Telephone:   415.436.7700
Facsimile:   415.436.7706
Jodi_Linker@fd.org

Counsel for Defendant ROMERO

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>JOSEPH ROMERO,<br><br>Defendant. | Case No. CR 19-0008 CRB<br><br>DEFENDANT'S SENTENCING MEMORANDUM<br><br>Date:   July 10, 2019<br>Time:   10:00 a.m.<br>Court:  Hon. Charles R. Breyer |

### **INTRODUCTION**

Without filing any motions or delaying the proceedings, defendant Joseph Romero quickly accepted responsibility for his conduct and pleaded guilty to being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). He did so pursuant to a plea agreement with the government under Federal Rule of Criminal Procedure 11(c)(1)(C) that calls for a sentence of 18 months in custody to be followed by 12 months of supervised release. This carefully crafted resolution reflects the parties' joint assessment of the risks of litigation, the guidelines and all of the other factors under 18 U.S.C. § 3553(a). Mr. Romero respectfully requests that the Court accept the parties' agreement and sentence him accordingly.

## DISCUSSION

The parties agree that Mr. Romero' final adjusted offense level is 17 and criminal history category is VI, resulting in a range of 51-63 months under the advisory guidelines. Pursuant to the plea agreement, the parties agree that a significant variance is warranted in this case and that a sentence of 18 months is sufficient, but not greater than necessary, to achieve all of the goals of sentencing.

The PSR incorrectly calculates the adjusted offense level as 21 based on its unfounded conclusion that the four-levels should be added because Mr. Romero was "charged with" a felony drug offense. Mr. Romero did not plead to that offense, nor was there sufficient evidence of his guilt for that offense, particularly given the large number of individuals residing in the location where the drugs were found. The plea agreement entered by the parties concludes that the correct adjusted offense level is 17. It is such, not level 21. Regardless, of the correct offense level, Mr. Romero is deserving of an 18 month sentence.

Mr. Romero's life has been marred by violence, neglect and lack of parental guidance and support. This is an appropriate basis for a variance. *See, e.g., United States v. Floyd*, 945 F.2d 1096, 1099 (9th Cir. 1991) (upholding a district court's downward departure from the sentencing guidelines on the basis of "youthful lack of guidance"). Mr. Romero's father was never in the picture, and for all intents and purposes, his mother has never been either. He was homeless by the age of 14, sleeping in the laundromat until a friend took him in. The only family he has ever really known are the people he met in his neighborhood and on the streets. While no one's background can be used as an excuse for the commission of a crime, it is important for the Court to consider Mr. Romero's life circumstances leading to his arrest.

Moreover, Mr. Romero's experiences have been identified by researchers as carrying long-term effects that require time and treatment to overcome. Adverse Childhood Experiences, or "ACEs," have been linked to significant increased risks of mental and physical health problems as people age. *See generally* Adverse Childhood Experiences (ACEs), Centers for Disease Control and Prevention, https://www.cdc.gov/violenceprevention/acestudy/index.html (last updated April 1, 2016). Researchers have identified a list of eight types of childhood trauma, each of which constitutes one "ACE." *See* Yael Cannon & Dr. Andrew Hsi, *Disrupting the Path from Childhood Trauma to Juvenile Justice: An*

*Upstream Health and Justice Approach*, 43 Fordham Urb. L.J. 425, 433 (2016). These trauma types include parental or caregiver substance abuse and violence directed against a mother. *See id*. Having even two of these factors can lead to substantial increases in the likelihood of long-term physical and mental health challenges. *Id*. at 435 ("For example, an individual with two ACEs had more than twice the risk of an individual with one ACE of ever attempting suicide.").

In addition to these factors, Mr. Romero experienced substantial trauma from the neighborhood where violence is prevalent and one is looked at as a target if they are not carrying a firearm. The emergence of these factors early in Mr. Romero's life has made it substantially harder for him to achieve and recover. Nonetheless, he is committed to turning his life around and will make every effort to do so.

Moreover, the Court should consider the exceptional acceptance of responsibility that Mr. Romero has shown by pleading guilty without filing a very promising motion to suppress or forcing the case to trial. As the Court is well aware, officers need probable cause to believe that an individual is residing at a particular address in order to conduct a probation search there. *See United States v. Grandberry*, 730 F.3d 968, 976 (9th Cir. 2013). Despite having a very strong motion to suppress, Mr. Romero waived his right to do so and instead pleaded guilty. Additionally, had he lost the motion to suppress, he had a viable defense at trial given that the officers found the gun and drugs not on Mr. Romero's person and in a location occupied by numerous individuals, including several with criminal records. This Court should take into account Mr. Romero's extraordinary acceptance of responsibility of responsibility in pleading guilty.

Finally, Mr. Romero will be placed on supervision for one year after he is released from custody. He agreed to be subject to a heightened search requirement, which will allow law enforcement to search him at any time of the day or night, with or without reasonable suspicion. He will also be supervised by a United States Probation Officer who can assist him in staying on track and moving forward in a positive direction. His time on supervised release is an important part of his sentence that will help achieve the Court's goals of deterrence and rehabilitation. The real tale of this case will not be told in the amount of prison time that this Court imposes, but in how Mr. Romero adjusts to supervision and avails himself of the resources of the Probation Department to make sure he succeeds as he matures.

///

*US v. Romero*, Case No. 19-008 CRB;
Def.'s Sent. Memo.                                     3

## **CONCLUSION**

Mr. Romero now stands before the Court with an adult federal felony conviction. Any way you look at it, this is a travesty: a young man with a difficult past involved in a serious crime and facing a federal prison term. But this is not the end for Mr. Romero. His youth also means that after his term of incarceration he will have a long future ahead that can be different and better. He is committed to that, and hopes the Court agrees this is an opportunity for him to turn his life around. As such, and pursuant to the plea agreement entered by the parties, he respectfully requests that the Court sentence him to a term of 18 months in custody followed by one year of supervised release.

Dated: July 31, 2019                                             Respectfully submitted,

                                                                        __/S_____
                                                                        JODI LINKER
                                                                        Assistant Federal Public Defender